UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MICHELE A. BRADLEY                                CIVIL ACTION

VERSUS                                            NO. 10-0068

LOUISIANA AIR NATIONAL GUARD                      MAGISTRATE JUDGE
ET AL.                                            JOSEPH C. WILKINSON, JR.

### ORDER AND REASONS

This is an employment discrimination action brought by plaintiff, Michele A. Bradley, a Technical Sergeant in the Louisiana Air National Guard (the "National Guard"), against Senior Master Sergeant Steven Hawkins and the Louisiana Military Department (originally improperly named as the Louisiana Air National Guard). In her complaint, Bradley alleges that she was discriminatorily denied a promotion to Master Sergeant on the basis of her race and gender, in violation of Title VII, 42 U.S.C. § 1981 and Louisiana anti-discrimination law. She also asserts state law claims of conversion, abuse of process and malicious actions based on the same facts. Record Doc. No. 1, Complaint.

Pursuant to Fed. R. Civ. P. Rules 12(b)(1) and 12(b)(6), Master Sgt. Hawkins filed a Motion to Dismiss all discrimination claims against him under federal and state law, as well as plaintiff's state law tort claims. Record Doc. No. 57. The motion is supported

by defendant's declaration under penalty of perjury. Record Doc. No. 57-2. Plaintiff filed a timely opposition memorandum. Record Doc. No. 58. Master Sgt. Hawkins received leave to file a reply memorandum. Record Doc. Nos. 59, 60, 61.

I.      FACTUAL BACKGROUND

The following facts are taken from plaintiff's complaint and the Equal Employment Opportunity Commission ("EEOC") documents attached to her complaint, which the court may consider in connection with a motion under Rule 12(b)(1) or 12(b)(6), and the declaration under penalty of perjury of Master Sgt. Hawkins, which the court may consider in connection with a motion under Rule 12(b)(1). At the time of the alleged discrimination on January 13, 2009, Bradley was employed as a Technical Sergeant in the job of Materials Handler in the 159th Fighter Wing Logistics Readiness Squadron, a unit of the National Guard. She applied, but was not selected, for an Active Guard Reserve position as an Equipment Manager with the rank of Master Sergeant. Senior Master Sgt. Hawkins is a Materials Handler Supervisor and was plaintiff's immediate supervisor at the time of the non-selection.

Bradley is a white, Hispanic female of Belizean national origin. Although her complaint in this court alleges only race and gender discrimination, her charge of discrimination filed with the EEOC also alleged color and national origin discrimination. Record Doc. No. 1-2, at p. 1; Record Doc. No. 1-3, at p. 1. She claims that Master Sgt.

Hawkins discriminated against her when he told her that an African-American male was selected for the Equipment Management job because that applicant was more of a minority than she was.

II.     ANALYSIS

Master Sgt. Hawkins argues that Bradley's claims should be dismissed either under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction or under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

   A.     Standards for Motion to Dismiss Under Rule 12(b)(1)

Motions filed under Fed. R. Civ. P. 12(b)(1) allow a party to challenge the court's subject matter jurisdiction to hear a case.

> Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.
> The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist.
> When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits. This requirement prevents a court without jurisdiction from prematurely dismissing a case with prejudice. The court's dismissal of a plaintiff's case because the plaintiff lacks subject matter jurisdiction is not a determination of the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction.

Ramming v. U.S., 281 F.3d 158, 161 (5th Cir. 2001) (citing Fed. R. Civ. P. 12(b)(1); Home Builders Ass'n of Miss., Inc. v. City of Madison, 143 F.3d 1006, 1010 (5th Cir. 1998); Barrera-Montenegro v. U.S., 74 F.3d 657, 659 (5th Cir. 1996); Williamson v. Tucker, 645 F.2d 404, 413 (5th Cir. 1981); Menchaca v. Chrysler Credit Corp., 613 F.2d 507, 511 (5th Cir. 1980); Hitt v. City of Pasadena, 561 F.2d 606, 608 (5th Cir. 1977); McDaniel v. U.S., 899 F. Supp. 305, 307 (E.D. Tex. 1995)); accord Johnson v. Aramco Servs. Co., 164 F. App'x 469, 470 (5th Cir. 2006).

"Given the burden of proof on the party asserting jurisdiction, the plaintiff must submit evidence to prove, by a preponderance of the evidence, that the court does have jurisdiction based on the complaints and evidence." Smith v. Potter, No. 09-60901, 2010 WL 4009874, at *2 (5th Cir. Oct. 13, 2010) (emphasis added) (citing Patterson v. Weinberger, 644 F.2d 521, 523 (5th Cir. 1981)). "A Rule 12(b)(1) motion should be granted only if it appears certain that the plaintiff cannot prove a plausible set of facts that establish subject-matter jurisdiction." Davis v. U.S., 597 F.3d 646, 649 (5th Cir. 2009), cert. denied, 130 S. Ct. 1906 (2010) (quotation omitted).

B.   Standards for Motion to Dismiss Under Rule 12(b)(6)

Master Sgt. Hawkins also moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). In two recent opinions, the United States Supreme Court clarified the standard for reviewing a motion to dismiss. Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009); Bell Atl. Corp.

v. Twombly, 550 U.S. 544 (2007). The Fifth Circuit has explained the Supreme Court's current standard as follows.

> When reviewing a motion to dismiss, we must accept all well-pleaded facts as true and view them in the light most favorable to the non-moving party. However, "[f]actual allegations must be enough to raise a right to relief above the speculative level." "'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" The Supreme Court in Iqbal explained that Twombly promulgated a "two-pronged approach" to determine whether a complaint states a plausible claim for relief. First, we must identify those pleadings that, "because they are no more than conclusions, are not entitled to the assumption of truth." Legal conclusions "must be supported by factual allegations."
> Upon identifying the well-pleaded factual allegations, we then "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."

Rhodes v. Prince, 360 F. App'x 555, 557-58 (5th Cir. 2010) (quoting Iqbal, 129 S. Ct. at 1949, 1950; Twombly, 550 U.S. at 555; Gonzales v. Kay, 577 F.3d 600, 603 (5th Cir. 2009)) (citing Baker v. Putnal, 75 F.3d 190, 196 (5th Cir. 1996)).

The Supreme Court emphasized that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a motion to dismiss. Iqbal, 129 S. Ct. at 1949. The

facial "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (quotation omitted).

At least one post-Twombly Fifth Circuit panel has reiterated the familiar concept that motions to dismiss for failure to state a claim are viewed with disfavor and are rarely granted. Rodriguez v. Rutter, 310 F. App'x 623, 626 (5th Cir. 2009) (citing Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498 (5th Cir. 2000); Kaiser Alum. & Chem. Sales v. Avondale Shipyards, 677 F.2d 1045, 1050 (5th Cir. 1982)); accord Test Masters Educ. Servs., Inc. v. Singh, 428 F.3d 559, 570 (5th Cir. 2005) (citing Shipp v. McMahon, 199 F.3d 256, 260 (5th Cir. 2000)).

    C.    <u>Plaintiff's Claims Against Master Sgt. Hawkins Are Non-Justiciable</u>

Bradley is a "dual status National Guard technician" under 32 U.S.C. § 709(e) as a matter of law. Based on that legal status, her claims against Master Sgt. Hawkins are non-justiciable. Therefore, her claims against this defendant must be dismissed for lack of subject matter jurisdiction.

It is undisputed that Bradley was employed as a Technical Sergeant in the National Guard. She incorrectly asserts in her opposition memorandum that no evidence has been produced that either she or Master Sgt. Hawkins were employees of the United States.

To the contrary, Master Sgt. Hawkins states in his sworn declaration that he is "a dual status National Guard technician and as such I am an employee of the Department of the Air Force pursuant to 32 U.S.C. § 709(e). . . . The plaintiff is also a National Guard technician employed pursuant to 32 U.S.C. § 709(e)." Record Doc. No. 57-2, at p. 1. In her opposition memorandum, plaintiff apparently admits that she is a dual-status employee. Record Doc. No. 58, at p. 3. Most importantly, Bradley bears the burden of proof to establish subject matter jurisdiction in response to defendant's motion to dismiss under Rule 12(b)(1). She has produced <u>no evidence</u> either to refute the facts asserted in Master Sgt. Hawkins's declaration or to support the allegation in her complaint that she is an employee of the State of Louisiana, not of the United States.

The record establishes that Bradley is a dual status technician with the National Guard as defined by 32 U.S.C. § 709(a), (b) and (e):

> (a) Under regulations prescribed by the . . . Secretary of the Air Force, . . . and subject to subsections (b) and (c),[1] persons may be employed as technicians in–
>> (1) the organizing, administering, instructing, or training of the National Guard;
>> (2) the maintenance and repair of supplies issued to the National Guard or the armed forces; . . . .
>
> (b) . . . a person employed under subsection (a) must meet each of the following requirements:
>> (1) Be a <u>military technician (dual status) as defined in section 10216(a) of title 10</u>.
>> (2) <u>Be a member of the National Guard</u>.
>> (3) Hold the military grade specified by the Secretary . . . for that position.
>> (4) While performing duties as a <u>military technician (dual status)</u>, wear the uniform appropriate for the member's grade and component of the armed forces. . . .
>
> (e) A technician employed under subsection (a) is an employee of the Department of the Army or the Department of the Air Force, as the case may be, <u>and an employee of the United States</u>.

32 U.S.C. § 709(a), (b) (emphasis added).

---

[1]There is no evidence that 32 U.S.C. § 709(c) applies in the instant case. Subsection (c) provides:
> A person may be employed under subsection (a) as a non-dual status technician (as defined by section 10217 of title 10) if the technician position occupied by the person has been designated by the Secretary concerned to be filled only by a non-dual status technician.

32 U.S.C. § 709(c)(1).
> Section 10217 of Title 10 defines a non-dual status technician as
>> a civilian employee of the Department of Defense serving in a military technician position who– . . . (2) is employed under section 709 of title 32 in a position designated under subsection (c) of that section and when hired was <u>not</u> required to maintain membership in the Selected Reserve.

10 U.S.C. § 10217(2) (emphasis added).

Title 10 Section 10216(a) defines a dual status technician as a federal employee. In an employment discrimination case by a dual status technician against her employer, "the language important for us is this: 'For purposes of this section and any other provision of law, a military technician (dual status) is a Federal civilian employee . . . .'" Walch v. Adjutant Gen. Dep't, 533 F.3d 289, 299 (5th Cir. 2008) (quoting 10 U.S.C. § 10216(a)).

In Walch, the Fifth Circuit explained that, even though the National Guard is administered by the Adjutant General of a particular State, a dual status technician in the National Guard is employed by the United States as a matter of law.

> The National Guard Technician Act, Pub.L. No. 90-486, 82 Stat. 755 (Aug. 13, 1968), created an unusual status, <u>mixing state command with federal employment</u>, combining civilian job positions with military leadership:
> . . . .
> Prior to 1968, all technicians, except those in the District of Columbia, were state employees paid with federal funds; approximately ninety-five percent of the technicians held dual status as members of the National Guard. In the National Guard Technicians Act of 1968, <u>Congress converted technicians to federal employee status</u> to provide them a uniform system of federal salaries, retirement, fringe benefits, and to clarify their status under the Federal Tort Claims Act (FTCA). Further, this legislation sought to recognize both the military and state characteristics of the National Guard by providing administrative authority to the states over the technicians.
> In Perpich v. Department of Defense, [496 U.S. 334, 348 . . . (1990),] the Supreme Court noted that National Guard personnel "must keep three hats in their closets–a civilian hat, a state militia hat, and an army hat–only one of which is worn at any particular time." Similarly,

9

> Congress intended that National Guard technicians wear one of three different hats at any given moment. First, National Guard technicians wear a civilian hat as <u>federal civilian employees</u>. Specifically, technicians are "excepted service" civil servants <u>employed under 32 United States Code § 709</u>.
>
> Second, as a condition precedent to the civilian position, the technician must separately obtain and <u>maintain military membership in a state National Guard</u>. Section 709(a) of [Title 32, U.S.Code] provides that individuals "may be employed as technicians only 'under regulations prescribed by the Secretary of the relevant military branch.'" Each technician "shall, while so employed, be a member of the National Guard and hold the military grade specified by the secretary concerned for that position." A technician must maintain membership in the National Guard or be terminated from the civilian technician position.
>
> Third, the technician wears a "federal hat" as a member of either the Army National Guard of the United States or the Air National Guard of the United States, which are Reserve Components of the United States Army and Air Force. Because they are, respectively, components of the United States Army and United States Air Force, the Army and <u>Air National Guard of the United States are part of the "Armed Forces" of the United States</u>.
>
> State adjutant generals administer the National Guard Technician Act. Although normally state officers, when administering the National Guard Technician Act, they are considered agents of the federal government.FN3
>
>> FN3. . . . Most of the 1968 Act was codified as 32 U.S.C. § 709.

<u>Walch</u>, 533 F.3d at 295-96 (emphasis added).

The Fifth Circuit in <u>Walch</u> ruled that federal discrimination claims like Bradley's are barred by the Supreme Court's and the Fifth Circuit's precedents, beginning with <u>Feres v. U.S.</u>, 340 U.S. 135 (1950). The Court in <u>Feres</u> held that Federal Tort Claims Act claims incident to military service are non-justiciable. <u>Walch</u>, 533 F.3d at 293. The

10

Feres doctrine has been expanded by the Supreme Court and the appellate courts to bar claims of both civilian and military employees against their military employers under Title VII, 42 U.S.C. § 1983, 42 U.S.C. § 1985 and Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971). Id. at 293 & n.3.

The specific issue in Walch was whether statutory and constitutional claims of discrimination and retaliation brought by a National Guard dual status technician (like Bradley) under Title VII, 42 U.S.C. §§ 1983 and 1985, and Bivens were barred by the Feres doctrine. Noting that the "Feres doctrine was premised on the disruptive nature of judicial second-guessing of military decisions," the Fifth Circuit held that the reasons cited by the Supreme Court in Feres and its progeny for barring claims arising incident to military service were also present in the case of a dual status technician suing his National Guard employer for employment discrimination or retaliation. Walch, 533 F.3d at 296-97 (citing U.S. v. Stanley, 483 U.S. 669, 684 (1987)). The Fifth Circuit

> conclude[d] that allowing claims pursuant to Bivens or Sections 1983 and 1985 to be brought by a National Guard technician against his chain of military command–even if some in that command also are technicians in addition to being Guardsmen–is contrary to the principles announced in the precedents we have cited. Technicians have a dual status. It is not possible to disentangle for these purposes their military role and command structure from their civilian employment, such that suits under Sections 1983 and 1985 or Bivens may proceed without raising the same concerns as when those claims are brought by traditional Guardsmen.

Id. at 297.

The Fifth Circuit analyzed Walch's Title VII claims separately because Title VII contains a specific waiver of immunity for employment discrimination claims against military departments. Id. at 298 (citing 42 U.S.C. § 2000e-16(a); 29 C.F.R. § 1614.103; Brown v. U.S., 227 F.3d 295, 298 (5th Cir. 2000)). "Congress has permitted Title VII claims to be brought by National Guard technicians. Feres is still a bar to many of the claims," however. Id. at 297.

Bradley in her opposition memorandum cites the observation in Brown that, "[a]lthough 42 U.S.C. § 2000e-16(a) constitutes a waiver of the Government's immunity from suit, this waiver has been understood to apply only to suits by civilian employees of the military departments, and not members of the armed forces." Brown, 227 F.3d at 298. Bradley relies on the Fifth Circuit's statement that, "[a]s a consequence of the limited scope of the Title VII waiver, employment discrimination claims by [Air Force Reserve technicians][2] must be categorized as either arising from their position as a civilian employee of a military department, or their position as a uniformed service member." Id. at 299. Bradley contends that her Title VII claims arise "purely from [her] civilian position [and] are provided for under Title VII; claims that originate from [a technician's] military status, however, are not cognizable." Id.

---

[2]The plaintiff in Brown was a dual status technician in the Air Force Reserve, not in the National Guard.

Bradley's allegation that her Title VII claims must be categorized as arising from her civilian position is unsupported by any evidence. Moreover, she fails to address the Fifth Circuit's ultimate reasoning and holding in Brown "that no justiciable claim could arise from the Air Force's decision that Captain Brown's performance was substandard and that he should be discharged from the Air Force Reserves, resulting in the termination of his employment as a technician." Walch, 533 F.3d at 299.

> Although Brown attempts to characterize his claim as arising from his civilian position, this is not the case. Brown seeks review of actions taken by the military that form the basis of his military discharge. While these actions had a civilian component, in that his discharge made him ineligible for his civilian position, they nonetheless were actions taken within the military sphere. Claims that involve this type of intrusion into military personnel decisions are not permissible, even under Title VII.

Brown, 227 F.3d at 299. Bradley does not explain how the National Guard's personnel decision not to promote her to the job of Equipment Manager is any different from the National Guard's personnel decision to discharge Captain Brown.

Moreover, Bradley does not address Walch, which is directly on point. The Fifth Circuit stated in Walch that, after Brown, "technicians' dual status and military command structure" remain relevant under Feres. Walch, 533 F.3d at 300 (citing Brown, 227 F.3d at 299). Thus, the Feres doctrine provides that the Title VII "claims that dual-status employees could not pursue [are] those that relate to enlistment, transfer, promotion,

13

suspension and discharge or that otherwise involve the military hierarchy." Id. (emphasis added).

Therefore,

> a court may not reconsider what a claimant's superiors did in the name of personnel management–demotions, determining performance level, reassignments to different jobs–because such decisions are integral to the military structure. Some of those decisions might on occasion be infected with the kinds of discrimination that Title VII seeks to correct, but in the military context the disruption of judicially examining each claim in each case has been held to undermine other important concerns.

Id. at 301 (emphasis added); accord Wetherill v. Geren, 616 F.3d 789, 795 n.8, 795-96, 798-99 (8th Cir. 2010), petition for cert. filed (Nov. 9, 2010) (No. 10-638).

Under the Feres doctrine, culminating in the Fifth Circuit's decisions in Brown and Walch, employment discrimination claims by dual status technicians like Bradley, whether brought "under Bivens, Sections 1983 and 1985, [or] Title VII," are non-justiciable. 533 F.3d at 301. The reasoning and holding of Walch are equally applicable to bar Bradley's statutory discrimination claim against Master Sgt. Hawkins under 42 U.S.C. § 1981 based on the same facts and the same allegations of discrimination as her Title VII claims. See Pegram v. Honeywell, Inc., 361 F.2d 272, 281 & n.7 (5th Cir.

2004) (standard of proof for Section 1981 claims is the same as for Title VII claims and Section 1981 claims are analyzed under the Title VII evidentiary framework).[3]

Finally, plaintiff's state law claims against her military employer are barred by Holdiness v. Stroud, 808 F.2d 417 (5th Cir. 1987), which held that "[j]udicial review of a claim for damages asserted on the basis of state law would constitute no less an unwarranted intrusion into the military personnel structure than the entertainment of claims founded in § 1985, § 1983, and Bivens. Absent express Congressional provision for such judicial intervention, the [Feres doctrine] . . . bars [plaintiff's] state law tort claims." Id. at 426.

---

[3] Although Master Sgt. Hawkins has not moved to dismiss on this basis, "[i]t is well established that '[T]itle VII provides the exclusive remedy for employment discrimination claims raised by federal employees.'" Smith v. Harvey, 265 F. App'x 197, 200 (5th Cir. 2008) (quoting Jackson v. Widnall, 99 F.3d 710, 716 (5th Cir. 1996)); see also Hollimon v. Potter, 365 F. App'x 546, 547 (5th Cir. 2010) (federal employee's claims under state law and 42 U.S.C. § 1981 were preempted by Title VII).

## CONCLUSION

For the foregoing reasons, Master Sgt. Hawkins's motion to dismiss for lack of subject matter jurisdiction is GRANTED and plaintiff's non-justiciable claims against this defendant are DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this \_\_\_15th\_\_\_ day of December, 2010.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE